<u>NOT FOR PUBLICATION</u>

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
_____
                               :
CHERYL A. VEACH,               :
                               :
            Plaintiff,         :    Civil No. 04-4456 (RBK)
                               :
       v.                      :    OPINION
                               :
JO ANNE B. BARNHART,           :
COMMISSIONER OF SOCIAL         :
SECURITY,                      :
                               :
            Defendant.         :
_____:
```

**KUGLER**, United States District Judge:

This matter comes before the court upon appeal by Plaintiff Cheryl A. Veach ("Veach"), pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits (DIB) and supplemental security income (SSI). For the reasons set forth below, the decision of the Commissioner will be reversed.

**I.   Background**

Veach applied for DIB and SSI on January 23, 2002, alleging a disability secondary to asthma, hearing loss, and depression with an onset date of December 23, 2001. While her claim was pending, Veach's doctors also diagnosed her with hepatitis C and

bipolar disorder.[1] The Social Security Administration (SSA) denied both Veach's initial claim and her request for reconsideration. On March 20, 2003, Veach filed a timely request for review by an Administrative Law Judge ("ALJ") and was heard before ALJ Gerald J. Spitz on April 20, 2004. He denied Veach's claim on May 13, 2004, determining that Veach could perform her past relevant work as a packer in spite of her impairments. Veach requested review by the Appeals Council, and the Appeals Council denied her request on July 16, 2004, making the ALJ's determination the Commissioner's final decision. Veach filed the present civil action on September 16, 2004.[2]

    Veach is a forty-two year old woman with an eighth grade education and no formal vocational training. She claims that since December 23, 2001, she had been repeatedly fired from jobs due to depression, anxiety, and mood swings, which caused poor

---

[1] Dr. Timothy H. Bulkley, M.D., diagnosed Veach with hepatitis C on November 23, 2003. (Exhibit 13F.) Her treating therapist diagnosed her with bipolar disorder on March 29, 2002. (Exhibit 14F.)

[2] In a subsequent application filed October of 2004, the SSA found Veach to be disabled on April 10, 2005, with a disability onset of May 1, 2004. The Commissioner argues that this second determination is irrelevant for the purposes of evaluating the ALJ's May 13, 2004, decision because "it is not improper or unusual to have differing disability determinations on overlapping periods of disability based on two disability applications with different records of evidence." (Def's. Opp. at 1 n.1.) Because this Court now holds that the ALJ's decision must be remanded for lack of substantial evidence, the Court will not reach the issue of the subsequent disability determination.

attendance, emotional breakdowns at work, and at least one violent outburst against a co-worker. (Transcript of Oral Hearing ("Tr.") at 24.) At the time of her hearing before the ALJ, Veach was working for a friend at the Neighborhood Deli in response to a recommendation by her therapist that she needed to "do something." (Tr. at 22.) Although she was scheduled to work five six-hour days per week, she claimed that she only made it to work "a couple of time[s] a week," and had to leave early on most of those days. (Tr. at 22-24.)

As the record makes evident, Veach had a deeply troubled past. As a child, she was abused by her father, damaging her hearing when she was six years old. (Exhibit 2F.) Her parents dealt drugs and, at one time, she witnessed her father commit murder and was forced to clean the mess. (Exhibit 2F.) At age thirteen, Veach either ran away or was ordered by her mother to leave home. She moved in with a thirty year old man who became her husband and the father of two of her children. (Exhibit 2F.) Veach took no schooling beyond the eighth grade, and had a problem with methamphetamine and cocaine addiction for approximately a decade. (Exhibit 3F.) She since rehabilitated and has been clean since 1989. (Exhibit 13F.) In July 2002, while her benefits claims were pending, Veach was hospitalized after her brother assaulted her and broke her jaw. (Exhibits 9F and 10F.)

Veach maintains that she is deaf in her left ear, requiring

a hearing aid. (Tr. at 6.) Her left eardrum is scarred from multiple surgeries (Exhibit 10F), and, in the hearing before the ALJ, Veach stated that her ear doctor recently determined that she had another hole in her eardrum. (Tr. at 6.) Veach also alleged severe asthma, requiring a number of daily inhalers, occasional visits to the emergency room, and use of a home nebulizing machine. (Tr. at 12.)

The bulk of the record relates to Veach's mental health history. Veach first sought psychiatric help in approximately 1985 or 1986 at the Cumberland County Guidance Center ("Guidance Center") where she regularly saw a psychiatrist and a social worker. (Tr. at 6-7.) She had a mental breakdown in 1999, requiring hospitalization; however, it appears that her visits to the Guidance Center had ceased some time prior to December 2001. (Exhibit 2F.) Her treatment resumed on January 28, 2002, and, as of the hearing date in April 2004, Veach testified that she was still going to the Guidance Center on a weekly basis to speak to a counselor and monthly to follow up on her medications. (Tr. at 8.) She also testified that she was seeing a new counselor, Nicole, who replaced her counselor of the previous year and a half. (Tr. at 8.)

At the time of the hearing, Veach took Topamax, Remeron, Oxazepam, and Depakote for her psychological problems. (Tr. at 8.) The record indicates several adjustments to her prescription,

and Veach claimed that the medications caused weight gain and made her tired and groggy. (Exhibit 14F.) At the time of the hearing, she took four or five hour naps five days per week. (Tr. at 9.) Veach also alleged that her mental impairments caused her "to want to stay in bed and away from people." (Disability Report at 80.) She did chores around the house when she was able, but did not do any shopping or keep track of the money. She suffered from mood swings and occasional violent outbursts, including an incident with a neighbor in May 2002, another incident in Louisiana in 2003, resulting in a three-day hospitalization, and a third incident, at a deli where she was fired for a violent outburst against a co-worker. (Tr. 26-28.) Veach was also hospitalized in 1999, prior to the relevant period, for a mental breakdown. (Tr. at 28; 31-33.)

Since she was thirteen, Veach has worked as a roofer, a short order cook, a seasonal packer of Christmas stockings, a housekeeper, and a bartender. The ALJ found that Veach's functional limitations would permit her to resume the work she did as a packer, a job she held for approximately four months a year over the course of three seasons.

## II. Standard of Review

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d

Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 301, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court may not weigh the evidence or substitute its conclusions for those of the fact-finder.").

 Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf

v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Secretary of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d 110, 114 (3d Cir. 1983)).

**III.    Discussion**

To establish eligibility for SSI and DIB, the applicant bears the burden of demonstrating that she has a "medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity" for a continuous period of at least a year. § 20 C.F.R. § 416.905(a) (2003).

The SSA employs a five-step sequential evaluation to ascertain whether the claimant is disabled, pursuant to 20 C.F.R. § 404.1520 and 416.920(b). The burden rests on the applicant to establish the first four factors: (1) she has not engaged in substantial gainful activity since the alleged onset of

7

disability; (2) she has a severe impairment, having more than a minimal effect on her ability to perform basic work-related activity on a sustained basis; (3) her impairment or combination of impairments meets or is equivalent to an impairment listed in the regulations; or (4) if her impairment is not equivalent to a listed impairment, her residual functional capacity is such that she cannot perform her past relevant work activity. If the ALJ determines that the claimant can perform her past relevant work, the claimant is not disabled for the purposes of the SSA. If she cannot perform her past relevant work, the ALJ must assess whether she is capable of performing other work existing in the national economy. 20 C.F.R. § 404.1520.

As the ALJ acknowledged, Veach needed only to establish that she was disabled on or before the date of the ALJ's decision, issued May 13, 2004. The ALJ nevertheless found that Veach was not disabled for the purposes of obtaining SSI or DIB. The ALJ resolved the first two factors in favor of Veach: she had not engaged in substantial gainful activity since the alleged onset of disability and her impairments were severe. However, the ALJ determined that Veach did not satisfy the third factor because her combination of impairments "do not meet or equal in severity any listed impairment." (Hearing Decision ("Decision") at 6-7.)

The ALJ then evaluated Veach's residual functional capacity to ascertain whether she could perform past relevant work. He

found that Veach had the residual functional capacity to do simple, routine, 1-2 step tasks associated with unskilled work. He also noted that she was restricted from performing work requiring fine hearing acuity or concentrated exposure to pulmonary irritants. Based on these assessments, the ALJ concluded that Veach was able to perform her past relevant work as a packer, in spite of her limitations.

**A.   Asthma, Hearing Impairment, Hepatitis C**

The ALJ's conclusion that Veach's asthma, hearing impairment, and hepatitis C did not prevent her from resuming her past relevant work is supported by substantial evidence. Veach provided no evidence aside from her own testimony to confirm that these conditions limited her residual functional capacity. All provided medical evidence suggests that these conditions did not restrict Veach in any significant way.

Besides Veach's testimony, the only evidence on record regarding her asthma is a consultative examination by Robert Coifman, M.D., on February 25, 2002, in which he noted that she failed to follow up after four weeks as required, was not following through with appropriate medical treatment, and was not, to his knowledge, disabled. (Exhibit 1F.) Similarly, the only evidence of her hearing impairment is an audiological evaluation by Ronald B. Lorenc, M.D., performed on May 3, 2002. (Exhibit 4F.) In the subsequent medical report, Dr. Lorenc noted

that her hearing loss is borderline on her left side--the side she claims to be most severely affected--and recommended she not wear a hearing aid. Finally, while Veach provided evidence of her hepatitis C in the form of medical reports from Timothy Bulkley, M.D., none of these reports mention any sort of functional impediment from her hepatitis. (Exhibit 13F.) Dr. Bulkley determined that Veach's treatment for hepatitis should be delayed until she is more emotionally stable, and also noted that she was asymptomatic.

No medical evidence suggests that Veach experiences any severe functional limitations or disabling symptoms from asthma, hearing impairment, or hepatitis. Consequently, the ALJ's determination that these conditions did not prevent Veach from resuming her past relevant work is consistent with the record and supported by substantial evidence.

**B.   Mental Impairments**

The ALJ's determination that Veach can work in spite of her mental impairments must be set aside for lack of substantial evidence. In evaluating Veach's psychological conditions, the ALJ ignored several pieces of relevant evidence and based his decision on unsupported conclusions and grievous factual errors. Accordingly, his conclusion that Veach can perform past relevant work will be reversed.

1.  **Failure to Weigh All Evidence**

An ALJ's failure to address all probative evidence on the record before him is cause for remand. Burnett v. Comm'r of Soc. Security Admin., 220 F.3d 112, 121-22 (3d Cir. 2000). While the ALJ may weigh credibility, he must consider each individual piece of evidence and explain his reasons for valuing or rejecting the evidence as he does. Id. at 121; Cotter, 642 F.2d at 705 ("In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."). Furthermore, an ALJ cannot reject a treating physician's testimony in the absence of contradictory medical evidence. Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991). Morales, 225 F.3d 310, 317 (3d Cir. 2000) ("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight.").

The ALJ's assessment of Veach's mental illness ignored considerable medical evidence, including diagnoses and descriptions of Veach's psychological conditions by Veach's treating and examining specialists. Although Veach's doctors treated her for a number of mental impairments, including bipolar disorder, panic disorder, and post traumatic stress disorder, the ALJ addressed only her depression for the purpose of his analysis. Similarly, the ALJ mentioned no psychological symptoms besides "depressed mood, anxiousness, and moodswings," and he

11

concluded from this that "there is no evidence in the mental health treatment records of a medical basis for the claimant not wanting to be around people or going to stores." (Decision at 4.)

The ALJ's analysis entirely disregarded the assessment of Veach's examining psychiatrist, Dr. Pagell, that Veach suffered from major depressive disorder, panic disorder with agoraphobia, posttraumatic stress disorder resulting from child abuse, dissociative disorder not otherwise specified (NOS), and personality disorder NOS. (Exhibit 3F.) In the same vein, the ALJ ignored numerous treatment records created by therapists and psychiatrists at the Guidance Center stating clearly that Veach's mental disabilities extended far beyond depression. These records diagnose Veach with a number of conditions, including recurrent flashbacks, panic attacks, extreme daily anxiety, and difficulty sleeping. (Exhibit 14F.) A notation on January 28, 2002, observed that Veach "can't function enough to keep a job," and a second report on March 29, 2002, diagnosed her with major depression and recurrent PTSD, recurrent flashbacks of childhood abuse, high anxiety daily, problems sleeping, and inability "to work due to anxiety." (Exhibit 14F.) The ALJ's failure to take these diagnoses and symptoms into account is reversible error.

Furthermore, the ALJ's obligation to examine all probative evidence extends to non-medical testimony. Id. at 122 ("Similar to the medical reports, the ALJ must also consider and weigh all

12

of the non-medical evidence before him."). Yet the ALJ addressed almost none of the oral testimony from the April hearing. He noted in his decision that he found Veach "not fully credible," and he appeared to give no weight to her testimony. (Decision at 7.)

More significantly, the ALJ nowhere acknowledged the testimony of Edwin Parent, Jr. ("Parent"), Veach's live-in boyfriend of three years. Parent testified to Veach's specific violent outbursts, her psychiatric hospitalizations, her inability to work a scheduled five-day week, and the fact that he takes care of most of the household chores, including shopping, yet the ALJ made absolutely no mention of Parent in his analysis. (Tr. at 31-33.) This failure to consider testimony is, in itself, sufficient cause for remand. See Id. (reversing ALJ's decision in part for failure to mention the testimony of claimant's husband and neighbor); Van Horn, 717 F.2d at 873 (setting aside an ALJ's decision for failure to explain rejection of non-medical testimony).

2.   **Unsubstantiated Conclusions**

In addition to the obligation to weigh all testimony, an ALJ may not make baseless conclusions that lack foundation in the record. The ALJ's determination must be grounded on medical or expert evidence, and may not depend solely on his own perceptions. Kent, 710 F.2d 110, 115 (3d Cir. 1983) (holding that

13

the ALJ's determination that the claimant is capable of engaging in sedentary activity cannot stand because it "is merely a function of the ALJ's own medical judgment"); see also Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 125 (3d Cir. 2000) ("an ALJ may not make speculative conclusions without any supporting evidence."). Where there is no evidence in the record supporting an ALJ's assessment, the court must set aside his conclusion. The ALJ's inability to rely upon his own conclusions is of particular concern when addressing mental disorders and anxiety since an individual's capacity to operate in certain supportive environments, such as the home or doctor's office, or on medication is not indicative of the individual's ability to work. See Morales, 225 F.3d at 319 ("For a person . . . who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic.").

In ascertaining the severity of Veach's conditions and her residual functional capacity, the ALJ drew a number of conclusions relating to Veach's ability to perform daily activities, her capacity for social interaction, and the success of her medications in controlling her psychological impairments that were devoid of any foundation in the record. The ALJ relied almost exclusively on Exhibits 2F, 3F, and 14F to determine that none of Veach's alleged disabilities was equivalent to a listed

impairment and that her residual functional capacity enabled her to resume her previous relevant work as a packer.[3] Yet, the cited documents are often in direct conflict with the ALJ's assessments, and his evaluation of the record is fraught with factual error.

For example, the ALJ relied heavily on the evaluation of Veach's examining psychiatrist, Dr. Pagell, but his interpretation of Dr. Pagell's report is clearly erroneous. The ALJ stated that Dr. Pagell "reported that the claimant performs all of her daily activities; she is able to care for her personal needs, take care of 4 children, and perform household chores including cleaning, cooking, laundry, and going grocery shopping (Exhibit 3F)." (Decision at 3; repeated on 4.) He noted also that Dr. Pagell "reported that the claimant's social functioning is adequate and she is able to relate adequately to family, friends, co-workers, and supervisors." (Decision at 3.) Yet, Dr. Pagell's report suggests quite the opposite. Dr. Pagell observed only that Veach "does some general cleaning, laundry, but does not shop or manage money . . . does not socialize and stays at home with her boyfriend. Her family relationships are distant." (Exhibit 3F.)

---

[3] Exhibit 2F consists of eighteen pages of Guidance Center intake records, beginning January 28, 2002, and Exhibit 14F is Guidance Center Treatment Contact Summary Sheets and Medication Monitoring records from April 3, 2002, through February 2, 2004, approximately two months before Veach's hearing with the ALJ. Exhibit 3F is an adult psychiatric evaluation conducted on May 11, 2002, by William Pagell, Ph.D.

There is no mention of Veach's four children,[4] nor is there any suggestion that she performs "all of her daily activities"; rather she cares for her personal needs "on good days." (Exhibit 3F.)

Similarly, the ALJ relied on Exhibits 2F and 14F--Veach's Guidance Center treatment records--to determine that Veach "was reported to be fully functional and her "symptoms were very well controlled on medication" without causing side affects. (Decision at 4.) Specifically he found, "Medical documentation reveals that medication controls the mild symptoms very well and . . . the claimant has been fully functional throughout the relevant period." (Decision at 2.) He later observed that "[m]edication provides very good relief and there is no evidence of any adverse side effects . . . [t]here is no evidence in the mental health treatment records that the claimant attempted to have her medications adjusted or changed due to adverse side effects (Exhibit 14F)." (Decision at 5.)

However, Exhibits 2F and 14F indicate that Veach's medications were adjusted a number of times over the course of her claim to address a barrage of issues. On May 3, 2002, for example, her Zoloft and Trazodone prescriptions were stopped because they were causing severe headaches. (Exhibit 2F.) On July

---

[4] In fact, it is clear from the record that only one of Veach's children has lived at home during any portion of the relevant period. (Exhibit 2F.)

16

4, 2003, Veach's psychiatrist decided to change her medications to Topamax to stabilize her mood and then switch to Lithium for the long term. Furthermore, in addition to Veach's complaints that mood stabilizers cause "brain seizures" (Exhibit 13F) and grogginess (Tr. at 9-10), the medical records demonstrate that she gained approximately 40-50 pounds from her Depakote. (Exhibit 14F.)

The ALJ's determination that Veach's symptoms are controlled also disregards several Guidance Center entries, including a note that she was admitted to the hospital on May 7, 2003, due to violent mood swings.[5] (Exhibit 14F.) Approximately one month later, on June 4, 2003, an entry noted that she still suffered from violent mood swings and anxiety and diagnosed her with bipolar mix. A July entry stated that Veach's anxiety medication was not working. (Exhibit 14F.) Although there are individual entries suggesting that the medication was working well for that particular week, these do not provide grounds for the ALJ's general conclusion that "her symptoms [are] under very good control with medication." (Decision at 3.) See Morales, 225 F.3d at 319 (holding that a doctor's "observations that [the claimant] is 'stable and well controlled with medication' during treatment

---

[5] The ALJ also ignores the testimony of both Veach and Parent that Veach was hospitalized at least twice during the relevant period for violent outbursts, once for attacking him and once for attacking a neighbor.

does not support the medical conclusion that [the claimant] can return to work.").

The ALJ further concluded that "[o]ther than medication, the claimant requires no treatment . . . [s]he has not required any therapy or counseling for her depression during the relevant period." (Decision at 5.) Yet, Veach's therapist recommended individual therapy on March 28, 2002, and her psychiatrist recommended individual therapy on February 22, 2002. (Exhibit 2F.) Dr. Pagell advised that Veach "should continue with her current psychological/psychiatric treatment," which included "outpatient psychiatric treatment once a week." (Exhibit 3F.) By the time of the hearing, Veach had seen a therapist at the Guidance Center for at least a year and a half. (Tr. at 8.)

Finally, the ALJ makes a number of unsubstantiated factual findings that directly conflict with all documented evidence. He stated at least three times that Veach does the grocery shopping, and at one point even noted that Veach "indicated in the documentary evidence that she does all shopping and grocery shopping." (Decision at 5.) Yet the record is replete with statements to the contrary, and entirely devoid of any suggestion that Veach shops at all. Similarly, the ALJ observes "[t]he claimant works 6 hours per day 5 days per week cooking in a deli," in spite of the fact that *all* evidence related to her deli job, including both her and Parent's testimony, confirmed that

18

she was consistently unable to work five days per week. (Decision at 4.) Without citing to any documentation, the ALJ also noted that Veach "has a generally full social life," and is "able to relate to other people and go to public places." (Decision at 3.) These assertions that have no evidentiary basis whatsoever and conflict with the testimony of both her examining and treating doctors. (Decision at 3.)

The ALJ's assessment of Veach's mental health is based substantially on conclusions that were either entirely without foundation or profoundly incongruent with the actual facts on record. These are not situations where the ALJ had two pieces of conflicting evidence and made a reasonable decision to weigh one over the other. Rather, the ALJ simply misread documents and attributed to the record facts that were not there.

Accordingly because the ALJ's findings relating to Veach's psychological impairments lack foundation in the record sufficient to constitute substantial evidence, and because he failed to weigh all of the evidence in the record, the ALJ's determination that Veach is not disabled will be reversed and remanded for further consideration.

The accompanying Order shall issue today.


Dated: __11/17/05__                     __S/Robert B. Kugler__
                                        ROBERT B. KUGLER
                                        United States District Judge